IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JOEY J. MITCHELL                                              PLAINTIFF

VS.                           CIVIL ACTION NO. 5:11-cv-137(DCB)(RHW)

CITY OF NATCHEZ, MISSISSIPPI,
and MIKE MULLINS, Individually
and in his Official Capacity as
Chief of the City of Natchez
Police Department                                            DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendants City of Natchez and Mike Mullins' motion for summary judgment **(docket entry 27)**. Having carefully considered the motion and response, the parties' memoranda and the applicable law, and being fully advised in the premises, the Court finds as follows:

This is an employment discrimination suit filed by a former City of Natchez police officer against the City and the former Chief of Police. The plaintiff, Joey Mitchell, brings claims under Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 against the defendants. His action under Title VII is brought against the City of Natchez. His claims under 42 U.S.C. §§ 1981 and 1983 are brought against Chief Mullins in his individual and official capacities, as well as against the City of Natchez.

The plaintiff claims he was discriminated against on the basis of his race (African-American) because of Chief Mullins' statement that he was going to recommend Mitchell's termination after a "due

process" hearing. Mitchell resigned on June 23, 2009, after learning that Chief Mullins intended to recommend his termination to the City's Board of Aldermen. Since he was not actually terminated, Mitchell claims he was constructively discharged because he was subjected to different employment terms and conditions based on his race.

The defendants, in their motion for summary judgment, assert the following:

(1) Mitchell's Title VII claim is time-barred because it was not filed within 180 days of the date of discrimination.

(2) Mitchell's employment discrimination claims, whether based on Title VII, § 1981 or § 1983, fail because the evidence is insufficient as a matter of law to show constructive discharge; therefore, Mitchell cannot prove an essential element of his claim of discrimination, i.e. that he "suffered an adverse employment action."

(3) Even if there were a genuine issue of material fact on constructive discharge, the plaintiff's evidence of racial discrimination is insufficient as a matter of law, because there is no proof that similarly situated white employees engaged in nearly identical misconduct and were treated more favorably.

(4) Chief Mullins is entitled to qualified public official immunity because he violated no clearly established statutory or constitutional rights of the Plaintiff of which a reasonable public

official would have been aware.

(5) There is no proof of any "policy, custom or practice" of the City of Natchez that would make it liable to the plaintiff under Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658 (1978), because the Board of Aldermen played no role in any of the events giving rise to the plaintiff's claims. Motion for Summary Judgment, pp. 2-3.

Mitchell was hired as a patrolman by the City of Natchez on November 1, 2005. Prior to his resignation on June 23, 2009, he had been suspended for insubordination in January of 2008, based on his failure to assist another officer with an inmate after being given a direct order to do so. Chief Mullins conducted a due process hearing and recommended to the Board of Aldermen that Mitchell be suspended for 24 hours without pay. The Board of Aldermen agreed and imposed on Mitchell a suspension for 24 hours without pay. Excerpts from Personnel File (docket entry 28-3).

The events leading to the present lawsuit occurred in June of 2009. On June 10, 2009, Mitchell confronted his "child's mother," Quadette Kaho, at the Adams County Juvenile Justice Center where she worked as a receptionist. The confrontation centered on a rumor that Mitchell had heard from "five various people in the community" that Kaho was pregnant. Written Statement of Plaintiff (docket entry 28-6). During this confrontation, Mitchell demanded that Kaho leave work immediately to go to an after-hours clinic and

take a pregnancy test to see if she was in fact pregnant. Mitchell also wanted her to see a doctor so that she would receive "prenatal care" because he did not "want a deformed baby." Id. When Ms. Kaho resisted, Mitchell got angry and told her that if she didn't do as he asked, he would "leave bodies dropping" and it would be her fault. Written Statement of Quadette Kaho (docket entry 28-7). According to Kaho, Mitchell placed his hand on his service revolver when he made this comment. After refusing several times, and after speaking with Edwina Smith, a co-worker, Kaho acquiesced to his demand and agreed to go to an outpatient clinic. Id.; Written Statement of Edwina Smith (docket entry 28-9).

The next day, June 11, 2009, Mitchell returned to the Juvenile Justice Center where he was searched by a security officer and told to surrender his weapon. He saw Kaho, but when she walked by him without speaking, he left the building. Written Statement of Plaintiff (docket entry 28-6); Incident Report (docket entry 28-11). Later that morning, Mitchell sent a text message to Kaho threatening to kill her and "everybody who gets in my way" if she reported his violent conduct. The text message reads as follows:

> Bitch if I was to ever find out u told such lie I would do everything in my power to kill y and I swear it on Brandons life cause u don't know what im doing it with that's one line y bet not cross cause ill kill y on ur job and everybody who gets in my way.

Text Message (docket entry 28-8). These events were confirmed by Adams County and Youth Court Judge John N. Hudson, who completed an

4

Incident Report after talking with Smith and Kaho on June 11, 2009. It was Judge Hudson who ordered the security officer to search Mitchell and have him surrender his weapon upon entering the Juvenile Justice Center. Hudson also arranged for Kaho to enter a local Women's Shelter. Incident Report (docket entry 28-11).

On June 11, 2009, Judge Hudson sent a report of Mitchell's threats to the Natchez Police Department. Commander Danny White was assigned to conduct an investigation. Commander White, who is also African-American, notified Mitchell that he was being placed on administrative leave with pay during an internal investigation based on Judge Hudson's report. Notice of Administrative Leave (docket entry 28-12). The Department's investigation determined that Mitchell likely violated the policy against "conduct unbecoming an employee of the City while on or off duty," and Chief Mullins notified Mitchell that a due process hearing would be held on June 19, 2009. Notice of Due Process Hearing (docket entry 28-13). The notice advised Mitchell that he had the right to respond orally or in writing, and "to have your supervisor, attorney or other representative present during this hearing." Id.

At the due process hearing, Mitchell was represented by two attorneys. Chief Mullins took into account the witness statements, Judge Hudson's report, and Mitchell's presentation of his version of the events before making a decision on the discipline he would recommend to the Board of Aldermen. At the conclusion of the

hearing, Mullins decided that Mitchell should be recommended for termination at the next public meeting of the Board of Aldermen, which was scheduled for the evening of June 23, 2009. Notice of Recommendation (docket entry 28-14). On June 23, 2009, prior to the meeting, Mitchell submitted his letter of resignation to Chief Mullins, advising that he had "accepted a position with the Corrections Corporation of America."[1] Letter of Resignation (docket entry 28-15). Because Mitchell voluntarily resigned, Chief Mullins considered the matter at an end, and therefore never went before the Board of Aldermen to recommend Mitchell's termination. Mullins Deposition, p. 13 (docket entry 28-2).

Under the City of Natchez's form of municipal government, Chief Mullins was not the ultimate decision maker in matters of employment. The Chief of Police, like the Chief of the Fire Department, does not have the authority to terminate an employee; that authority and power rests with the Board of Aldermen. See Eidt v. City of Natchez, 382 So.2d 1093, 1095 (Miss. 1985)(power to discharge is vested in Natchez's Board of Aldermen, not Fire Department Chief, who is without authority to terminate). When the Chief recommends termination to the Board, the Board allows the employee to respond at a hearing. The Board then decides whether

---

[1] Prior to June 23, 2009, Mitchell had submitted an application for employment to the Corrections Corporation of America. Application (docket entry 28-16).

to go along with the recommendation and terminate the employee, or to reject the recommendation and retain the employee. If the Board terminates the employee, the employee can then appeal to the Civil Service Commission. If dissatisfied with the outcome of his case before the Civil Service Commission, the employee can have his case reviewed by the courts, including the Mississippi Supreme Court. Mullins Deposition, p. 12 (docket entry 28-2).

Had Mitchell not voluntarily resigned, and had the Board voted to terminate him, he would have had the administrative process available to challenge the Board's decision, and an additional opportunity for judicial review of the Civil Service Commission's decision. Instead, Mitchell resigned before the Chief presented his recommendation to the Board. After his resignation, the plaintiff worked for Corrections Corporation of America ("CCA") from July 13, 2009 until he was fired on November 20, 2009. Acceptance of Employment (docket entry 28-17); Notice of Termination (docket entry 28-18).

Apparently, Mitchell came to believe he had been discriminated against by the City of Natchez and Chief Mullins when he learned that a white Natchez police officer, Gary Nations, had allegedly made threats of violence against his wife, and received a three day suspension rather than termination. Mitchell Deposition, p. 79 (docket entry 28-1). After learning of Nations' circumstances in April of 2010, Mitchell filed an EEOC charge. EEOC Charge of

7

Discrimination (docket entry 28-21).

The EEOC investigated Mitchell's allegations and ultimately concluded that there was reasonable cause to believe that discrimination had taken place. EEOC Note to the File (docket entry 28-24); EEOC Determination (docket entry 28-27). When efforts at conciliation failed, and after the Department of Justice ("DOJ") declined to file suit on behalf of Mitchell, he filed the present civil action on September 20, 2011. DOJ Notice of Right to Sue (docket entry 28-26).

The Federal Rules of Civil Procedure provide that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Rule 56(a) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may discharge its initial responsibility by simply showing that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

If the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial,"

then the burden shifts to the nonmoving party to show that an issue of material fact exists. Celotex, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the nonmoving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (quoting Fed.R.Civ.P. 56(e)). A material fact is one that might affect the outcome of the suit. A bare contention that an issue of fact exists is insufficient to create a factual dispute. Booth v. Wal-Mart Stores, Inc., 75 F.Supp.2d 541, 543 (5th Cir. 1999). In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the Supreme Court observed:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact .... As to materiality, the substantive law will identify which facts are material ....

Id. at 247-248 (emphasis in original). Therefore, the existence of contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

Title VII prohibits employers from discriminating based on,

inter alia, an individual's race. 42 U.S.C. § 2000e-2(a). Where, as here, the plaintiff relies on circumstantial evidence, the Court applies the framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 345 (5th Cir. 2007). Pursuant to that framework, Mitchell must first make a prima facie case of discrimination based on his race. Vaughn v. Woodforest Bank, 665 F.3d 632, 636 (5th Cir. 2011); Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004). To establish a prima facie case, Mitchell must show that he:

(1) was a member of a protected group;

(2) was qualified for the position in question;

(3) was subjected to an adverse employment action; and

(4) received less favorable treatment due to his membership in the protected class than did other similarly situated employees who were not members of the protected class, under nearly identical circumstances. Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745, 660 F.3d 211, 213 (5th Cir. 2011); Smith v. City of Jackson, Miss., 351 F.3d 183, 196 (5th Cir. 2003).

If Mitchell establishes a prima facie case, the burden then shifts to the City of Natchez to "articulate a legitimate, non-discriminatory reason for firing' him. Vaughn, 665 F.3d at 636. If the City does so, Mitchell must "offer sufficient evidence to create a genuine issue of material fact either (1) that [the City's] reason is not true, but is instead a pretext for

discrimination (pretext alternative); or (2) that [the City's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Mitchell's] protected characteristic (mixed-motives alternative)." Id.

The City of Natchez concedes that Mitchell was a member of a protected group and was qualified for his position. However, the City asserts that the plaintiff fails to show that he was subjected to an adverse employment action. For purposes of proving a prima facie case of discrimination, a tangible, adverse employment action is defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." La Day v. Catalyst Technology, Inc., 302 F.3d 302 F.3d 474, 481 (5th Cir. 2002)(citing Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998).

Since Mitchell resigned and was not formally terminated, the only way he can establish an adverse employment action through the loss of his job is by showing that the City constructively discharged him. See Summit v. S-B Power Tool, 121 F.3d 416, 421 (8th Cir. 1997)("To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit.").

"A constructive discharge arises only when a reasonable person

would find the conditions of employment intolerable." Id. "The conduct complained of must have been severe or pervasive enough to create an objectively hostile or abusive work environment ...." Tadlock v. Powell, 291 F.3d 541, 547 (8th Cir. 2002). Chief Mullins did not create intolerable working conditions by notifying Mitchell of his intention to recommend his termination, or by notifying him that a hearing would be held before the Board of Aldermen. Mitchell does not dispute that he was notified of the hearing, nor does he dispute that Chief Mullins could only recommend his termination to the Board of Aldermen, not exercise the final authority. He also does not dispute that had he not resigned, he would have had the opportunity not only to appear before the Board, but to appeal to the Civil Service Commission and the courts. The plaintiff's termination was not a foregone conclusion, since Chief Mullins did not possess authority over the final decision. Furthermore, the prospect of undergoing the City's termination procedures was not an intolerable condition of employment. Mitchell's decision not to participate in the proceedings cannot be blamed on the Chief's notifying Mitchell of his recommendation.

Mitchell has failed to show he suffered an adverse employment action. Since he cannot establish a prima facie case of discrimination, the City is granted summary judgment on Mitchell's Title VII claim.

The elements of discrimination claims under Title VII, § 1981

12

and § 1983 are the same.  See DeCorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007)(Title VII and § 1981); Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 342 (5th Cir. 2002)(Title VII and § 1983).  Therefore, because Mitchell has not shown that he suffered an adverse employment action, his claims under § 1981 and § 1983 fail as well, and the City and Chief Mullins are granted summary judgment on these claims.  Accordingly,

IT IS HEREBY ORDERED that the defendants City of Natchez and Mike Mullins' motion for summary judgment **(docket entry 27)** is GRANTED.

A separate Final Judgment dismissing this case with prejudice will be entered forthwith.

SO ORDERED, this the 10th day of January, 2013.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE